IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TIB — THE INDEPENDENT BANKERSBANK, § § § Plaintiff, § § Civil Action No. 3:14-CV-0011-D VS. § § CANYON COMMUNITY BANK, § § Defendant. § | |

MEMORANDUM OPINION
AND ORDER

In this removed action alleging claims for breach of contract, unjust enrichment, money had and received, and negligent misrepresentation, defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the court grants the motion in part, denies it in part, and grants plaintiff leave to replead.

I

In 2002 plaintiff TIB — The Independent BankersBank ("TIB") and defendant Canyon Community Bank ("CCB") entered into a Correspondent Bank Mortgage Loan Agreement ("2002 Agreement").[1] The 2002 Agreement was superseded by a Correspondent Bank Mortgage Loan Agreement entered into in 2009 ("2009 Agreement"). Under the 2002 and 2009 Agreements (collectively, the "Agreement," unless the context otherwise requires),

---

[1]In deciding defendant's Rule 12(b)(6) motion, the court construes plaintiff's state court petition in the light most favorable to plaintiff, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiff's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

TIB agreed to purchase from CCB various conventional, FHA, VA, and/or jumbo residential mortgage loans, including the servicing rights of these loans. CCB agreed to submit completed loan packages to TIB to assist it in marketing the loans to the secondary market. CCB also agreed that it would "originate and process all Loans in accordance with customary and prudent lending practices of financial institutions and in full compliance with the requirements of" the Federal National Mortgage Association ("Fannie Mae"). Pet. ¶ 6 (quoting Ex. A at 1-2). TIB alleges that "[a]t all times, the parties knew and intended for TIB to sell the loans to third party investors." *Id.* ¶ 5.

CCB warranted in the Agreement that, as of the time any loan package was submitted to TIB, each loan conformed to the specifications "set forth by TIB and in applicable investor and insurer regulations, rules, guides and handbooks for mortgage loans eligible for sale to, insurance by or pooling to back securities issued or guaranteed by, said investors and insurers."[2] *Id.* ¶ 8 (quoting Ex. A at 3-5). CCB agreed to indemnify TIB for any losses

---

[2]CCB further warranted:

> The Loan file contains each of the documents and instruments required by applicable law or investor or insurer requirements and/or specified to be included therein duly executed and in due and proper form and each such document is genuine and in form acceptable to the applicable investors and insurers and the information contained therein is true, accurate and complete. The Loan was originated in accordance with the applicable investor and insurer underwriting standards in effect at the time of origination.

Pet. ¶ 8 (quoting Ex. A at 3-5).

incurred as a result of any breach of warranty by CCB or of "any acts, errors or omissions of [CCB] . . . with respect to the origination of any Loan . . . prior to the date of sale to TIB or thereafter in connection with the performance of any of [CCB's] obligations." *Id.* (quoting Ex. A at 6-7). It also agreed that:

> In the event that TIB discovers that any of the representations and warranties made in this Agreement by [CCB] were not accurate at or as of the time they were made by [CCB], TIB, subject to any limitations of the applicable investor, may demand that [CCB] repurchase from TIB or the applicable investor either (a) the right to service any Loan which is affected by the inaccurate representation and warranty; or (b) such Loan.

*Id.* at ¶ 9 (quoting Ex. A at 7).

On March 1, 2008 TIB purchased a loan (the "Loan") from CCB and, pursuant to the Agreement, sold the Loan to Fannie Mae. During a post-foreclosure review of the Loan file, Fannie Mae discovered that the borrower received a $1,000 credit at closing that was not properly identified in the Loan file, and that three other loans totaling $27,367.00 were not disclosed by the borrower in the loan application. It notified TIB on January 31, 2013 that part of the borrower's deposit consisted of funds that were inadequately documented, that the borrower's financial condition was misrepresented in the origination application, and that the misrepresentation of the borrower's financial condition was an unacceptable layering of risk, and, as a result, the Loan was ineligible for sale to Fannie Mae. Because the Loan did not comply with Fannie Mae's underwriting guidelines and requirements, TIB was forced to repurchase the Loan from Fannie Mae.

On September 23, 2013 TIB demanded that CCB repurchase the Loan, pursuant to the

Agreement. When CCB failed and refused, TIB sued CCB in state court alleging claims for breach of contract, unjust enrichment, money had and received, and negligent misrepresentation. CCB removed the case to this court and now seeks to dismiss TIB's claims under Rule 12(b)(6).

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] complaint by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and alteration omitted). To survive CCB's motion to dismiss under Rule 12(b)(6), TIB must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration

omitted). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

"'Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.'" *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (holding that claim is "subject to dismissal under Rule 12(b)(6) . . . when [an] affirmative defense clearly appears on the face of the complaint."). "In the usual case, this court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint." *Simon v. Telsco Indus. Emp. Benefit Plan*, 2002 WL 628656, at *1 (N.D. Tex. Apr. 17, 2002) (Fitzwater, J.). Furthermore, "[i]t is well settled . . . that in order for a defendant to prevail on the basis of limitations at the pleadings stage, the plaintiff must normally plead [it]self out of court." *W. Fork Partners, L.P. v. Chesapeake Exploration, L.L.C.*, 2009 WL 2252505, at *5 (N.D. Tex. July 29, 2009) (Fitzwater, C.J.) (quoting *Funches v. City of Dallas*, 1999 WL 261842, at *2 (N.D. Tex. Apr. 28, 1999) (Fitzwater, J.)) (alteration in original).

III

The court turns first to CCB's breach of contract claims.

A

TIB appears to allege three separate breaches of the Agreement: (1) CCB breached the Agreement's representations and warranties with respect to the Loan, and TIB is entitled to indemnification as a result; (2) CCB breached the Agreement by failing to indemnify TIB; and (3) CCB breached the Agreement by refusing to repurchase the loan, and TIB is entitled to specific performance as a result.[3]

TIB alleges that CCB agreed to originate and process the Loan in full compliance with Fannie Mae's requirements, and that CCB represented and warranted that the Loan was originated in accordance with Fannie Mae's underwriting standards in effect at the time of origination, that the Loan file contained all of the documents and instruments required by Fannie Mae, and that such documents were true, accurate, and complete. TIB asserts that the Loan failed to conform to Fannie Mae's guidelines because part of the borrower's deposit consisted of funds that were inadequately documented, such that the Loan file was not complete or accurate in this respect, and the misrepresentation of the borrower's financial

---

[3]TIB alleges a claim for "specific performance" in addition to its breach of contract claim. "Specific performance," however, is not a cause of action; it is a remedy for breach of contract. *See Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 571 (Tex. App. 2008, pet. denied) ("Specific performance is an equitable remedy that may be awarded at the trial court's discretion upon a showing of breach of contract. Specific performance is not a separate cause of action, but rather it is an equitable remedy . . . when [monetary] damages would not be adequate." (alteration in original) (citations omitted)). Accordingly, the court treats TIB's "specific performance" claim as a claim for breach of contract under Texas law.

condition was considered an unacceptable risk to Fannie Mae. TIB avers that because CCB did not process or originate the Loan in accordance with Fannie Mae's requirements and underwriting standards, CCB breached the Agreement's representations and warranties with respect to the Loan and breached the Agreement by failing to indemnify TIB. TIB also alleges that CCB was obligated to repurchase the Loan within 15 business days of TIB's written repurchase demand on September 23, 2013, and that CCB's failure and refusal to repurchase the Loan breached the Agreement.

Relying on the Texas four-year statute of limitations for breach of contract claims, CCB maintains that TIB's breach of contract claims are time-barred.[4] It posits that TIB alleges that CCB breached representations and warranties that were made at or before the time TIB purchased the loans from CCB, and that, on the face of the pleadings, the alleged breach of contract occurred in or before March 2008. In anticipation of TIB's arguments, CCB also sets forth the same arguments that it urged in *TIB — The Independent BankersBank v. Canyon Community Bank,* 2014 WL 145284, at *3 (N.D. Tex. Jan. 15, 2014) (Fitzwater, C.J.) ("*TIB I*"), which involved the same parties and substantially similar facts.

TIB responds that its breach of contract claims arose from CCB's failure to repurchase

---

[4]The 2002 Agreement contains the following purported waiver of any applicable statute of limitations: "The indemnity provided in this Section shall remain in full force and effect regardless of any . . . applicable statute of limitations which is expressly waived." Pet. Ex. B at 6. CCB argues that this waiver is void as against public policy because of its broad and indefinite scope. TIB responds that, because its breach of contract claim is timely, the court need not address waiver. Given the basis for the court's decision, it does not reach this issue.

the defective Loan or otherwise indemnify TIB for its losses, which did not occur until 2013, when CCB failed to timely repurchase the Loan following TIB's demand. CCB replies that TIB's claim accrued at the time of the Loan purchase, and that whether TIB had to make a demand to comply with a contractual remedy provision is irrelevant to when the cause of action accrued.

B

The court considers first TIB's claim that CCB breached the Agreement by failing to indemnify TIB. It holds that CCB is not entitled to dismissal of this claim at the Rule 12(b)(6) stage.

As the court stated in *TIB I*:

> Under Texas law, a cause of action for contractual indemnification accrues either at the time a judgment is rendered or at the time a judgment is paid, depending on the language of the contract. As such, an action for indemnification or contribution does not accrue for limitations purposes until a plaintiff recovers damages or settles its suit against a defendant.

*TIB I*, 2014 WL 145284, at *4 (internal quotation marks, citations, and footnotes omitted). TIB alleges that Fannie Mae sent it a notification regarding the Loan on January 31, 2013, and that, presumably at some point thereafter, it was forced to repurchase the Loan from Fannie Mae. Because TIB has not pleaded facts that would permit the conclusion that a contractual indemnification claim arose prior to January 31, 2013, the court denies CCB's motion to dismiss TIB's breach of contract claim based on CCB's alleged breach of the indemnification provision of the Agreement.

C

The court next considers whether the statute of limitations bars TIB's breach of contract claims based on allegations that CCB breached the Agreement's representations and warranties with respect to the Loan and that TIB is entitled to indemnification as a result, and that CCB breached the Agreement by refusing to repurchase the loan.

Under Texas law, a four-year statute of limitations applies to breach of contract claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (West 2002). A cause of action for breach of contract generally accrues when the contract is breached. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). "However, the discovery rule may serve to delay the commencement of the limitations period for a breach of contract action." *Truman Arnold Cos. v. Hammond & Consultants Enters., Inc.*, 2010 WL 2982912, at *1 (Tex. App. July 30, 2010, no pet.) (citing *Barker v. Eckman*, 213 S.W.3d 306, 311-12 (Tex. 2006)); *see also Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d 713, 717 (Tex. App. 2002, no pet.) ("A cause of action for breach of contract is generally regarded as accruing when the contract is breached or when the claimant has notice of facts sufficient to place him on notice of the breach."). When applicable, the discovery rule will "defer accrual of a cause of action until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *Barker*, 213 S.W.3d at 311-12 (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)). "In order for the discovery rule to apply, the nature of the injury must be inherently undiscoverable and the injury itself must be objectively verifiable." *Id.* (citation omitted).

TIB alleges that it "was unaware of the issues with the Loan until on or about January 31, 2013, when Fannie Mae sent notification to TIB and demanded repurchase." Pet. ¶ 13. This allegation is sufficient to invoke the discovery rule. *See, e.g., Rodessa Operating Co. v. Leverich Liquidation Co.*, 2014 WL 172504, at *4 (Tex. App. Jan. 16, 2014, pet. filed) (holding that plaintiff pleaded discovery rule by alleging that expert's examination constituted plaintiff's "first actual notice . . . that the failure was caused by the lack of due care, manufacturing defects, and contractual violations of" the defendants); *Galindo v. Snoddy*, 415 S.W.3d 905, 910 n.8 (Tex. App. 2013, no pet.) (holding that, although plaintiff did not explicitly plead discovery rule, pleadings provided fair notice of its application where "petition allege[d] that the falsity of the representations was not discovered until after she had made the demanded payment [and] [a]n attorney of reasonable competence would understand these allegations as invoking the discovery rule."). Because the discovery rule, if applicable,[5]

---

[5]In holding that TIB's pleading the discovery rule precludes the court from granting CCB's motion to dismiss based on the statute of limitations, the court does not suggest that the discovery rule will apply in this case. Indeed, Texas courts, including the Supreme Court of Texas, have noted that "[t]he discovery rule may apply to a breach of contract claim, but 'those cases should be rare, as diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims.'" *Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 543 (Tex. App. 2013, no pet.) (quoting *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 315 (Tex. 2006)). Application of the discovery rule to TIB's breach of contract claims will depend, *inter alia*, on whether TIB can prove that CCB's alleged breach of contract was inherently undiscoverable. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988) ("The party seeking to benefit from the discovery rule must . . . bear the burden of proving and securing favorable findings thereon."); *see also Bell v. Phila. Int'l Records*, ___ F.Supp.2d ___, 2013 WL 5740217, at *2 (S.D. Tex. Oct. 22, 2013) ("Whether an injury is inherently undiscoverable is a legal question and is determined on a categorical basis." (citing *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 735 (Tex. 2001))).

would toll the four-year statute of limitations until TIB knew or should have known of the alleged breach, the court is unable to conclude from the face of the pleadings that the statute of limitations bars TIB's remaining breach of contract claims.

Accordingly the court denies CCB's motion to dismiss these claims under Rule 12(b)(6).[6]

IV

The court next considers whether CCB is entitled to a dismissal of TIB's negligent misrepresentation claim under either the statute of limitations or the economic loss rule.

A

Under Texas law, a claim for negligent misrepresentation consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *TIB I*, 2014 WL 145284, at *5 (citing *Hurd v. BAC Home Loans Servicing, LP*, 880 F.Supp.2d 747, 762 (N.D. Tex. 2012) (Lynn, J.)). In support of its negligent misrepresentation claim, TIB alleges that:

---

[6]Because the court concludes that TIB's pleading the discovery rule precludes CCB from prevailing on its 12(b)(6) motion based on its statute of limitations affirmative defense, the court need not address whether CCB's breach of contract claim based on CCB's alleged breach of the repurchase provision accrued in 2008, at the time TIB purchased the Loan, or whether this constituted a separate breach that instead accrued when CCB failed and refused to repurchase the Loan after TIB demanded repurchase in September 2013.

> CCB, in the course of its business, supplied false information about the borrower's deposit and financial condition. If CCB had used reasonable care, it would not have permitted TIB to rely on false information when TIB purchased the Loan. TIB unknowingly and justifiably relied on CCB's representations and, as a result, TIB suffered a pecuniary loss.

Pet. ¶ 39.

B

The court considers first whether this claim is time-barred. CCB argues that TIB's negligent misrepresentation claim should be dismissed because the claim is based on alleged conduct that occurred at or before the purchase of the Loan in March 2008, and the two-year limitations period commenced, at the latest, two years after the purchase of the Loan.

TIB responds that the discovery rule applies "because TIB's injuries resulted, in part, from CCB's misrepresentation that it would repurchase the Loan from TIB if the Loan failed to conform to investor requirements." P. Br. 7. TIB argues that, even if it exercised due diligence, it could not have known that CCB would refuse to repurchase loans sold to TIB over four years ago or otherwise refuse to indemnify TIB for such loans. In other words, TIB's injury was "inherently undiscoverable" until 2013. *Id.*

TIB's negligent misrepresentation claim is based on the allegation that CCB supplied false information about the borrower's deposit and financial condition in connection with the Loan; TIB does not plead a negligent misrepresentation claim based on the allegation that CCB misrepresented that it would repurchase the Loan from TIB if the Loan failed to conform to investor requirements. Nonetheless, the court holds that TIB's allegation that it

"was unaware of the issues with the Loan until on or about January 31, 2013, when Fannie Mae sent notification to TIB and demanded repurchase," Pet. ¶ 13, precludes the court from concluding, based on the face of the pleadings, that TIB's negligent misrepresentation claim is barred by limitations. "The discovery rule applies to [a] claim of negligent misrepresentation if: '(1) the injury is inherently undiscoverable; and (2) the evidence of the injury is objectively verifiable.'" *Matthiessen v. Schaefer*, 27 S.W.3d 25, 31 (Tex. App. 2000, pet. denied) (quoting *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex. 1997)). TIB has alleged that CCB supplied false information regarding the Loan and that it did not discover "the issues with the Loan" until January 31, 2013. These allegations are sufficient to invoke the discovery rule. Because the discovery rule, if applicable, would toll the limitations period, the court denies CCB's motion to dismiss TIB's negligent misrepresentation claim based on limitations.

C

CCB next argues that the economic loss doctrine bars TIB's negligent misrepresentation claim because this claim is "'merely a repackaged breach of contract claim.'" D. Br. 18 (citation omitted).

1

Under Texas law, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citations omitted). That is, "a duty in tort does not lie when the only injury claimed is one for economic

damages recoverable under a breach of contract claim." *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App. 2007, pet. denied); *accord Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *Martin K. Eby Constr. Co. v. LAN/STV*, 350 S.W.3d 675, 687 (Tex. App. 2011, pet. granted). "The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc.*, 711 S.W.2d at 618; *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) ("When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.").

"Texas courts have specifically addressed the application of the economic loss rule to negligent misrepresentation claims," holding that a plaintiff may not bring such a claim unless he "can establish that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contact claim." *Sterling Chems., Inc.*, 259 S.W.3d at 797 (citing *D.S.A. Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998)). "If a plaintiff asserts a negligent misrepresentation claim, but seeks only benefit-of-the-bargain damages as opposed to the permissible out-of-pocket damages, the plaintiff cannot establish an independent injury and the economic loss rule bars recovery." *Martin K. Eby Constr. Co.*, 350 S.W.3d at 687 (citing *Sterling Chems., Inc.*, 259 S.W.3d at 798).

2

In its petition, TIB alleges that it "was forced to repurchase the Loan from Fannie

- 14 -

Mae," Pet. ¶ 14, and it seeks, *inter alia*, "all out of pocket losses," *id.* at 10. Under Texas law, "'damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for *the pecuniary loss to him of which the misrepresentation is a legal cause*[.]'" *CCE, Inc. v. PBS & J Constr. Servs.*, 2011 WL 345900, at *6 (Tex. App. Jan. 28, 2011, pet. filed) (quoting *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)). Texas courts have held that where a plaintiff seeks to recover out-of-pocket expenses incurred in reliance on the defendant's misrepresentation, the plaintiff "establish[es] an injury that is independent of its breach of contract claim." *Martin K. Eby Constr. Co.*, 350 S.W.3d at 688 (holding that economic loss doctrine did not bar plaintiff's negligent misrepresentation claim because plaintiff presented "evidence that its out-of-pocket expenses were incurred in addition to the costs for the delays, changes, modifications, and rework caused by inaccuracies in the bid documents prepared by [the defendant]"); *CCE, Inc.*, 2011 WL 345900, at *7-8 (holding that economic loss rule did not apply to plaintiff's negligent misrepresentation claim where plaintiff sought "reliance damages as measured by its out-of-pocket expenditures and consequential losses, not damages for the benefit of its bargain on its contract with TxDOT as measured by any lost sales or profits."). To the extent TIB seeks to recover out-of-pocket expenses incurred in connection with having to repurchase the Loan from Fannie Mae, it has sufficiently alleged an injury independent from the economic loss to the subject matter of the Agreement (i.e. the Loan). Accordingly, the court denies CCB's motion to dismiss TIB's negligent misrepresentation claim based on the economic loss rule. *See, e.g., Nazareth Int'l, Inc. v. J.C. Penney Corp.*, 2005 WL 1704793, at *8 (N.D. Tex. July

19, 2005) (Lynn, J.) (denying motion to dismiss negligent misrepresentation claim based on economic loss doctrine where it was possible that plaintiff could prove that alleged injuries were independent from the subject matter of the contract).[7]

V

Finally, the court considers CCB's motion to dismiss TIB's claims for unjust enrichment and money had and received. CCB argues, *inter alia*, that because TIB's petition recognizes that a contract controls the subject matter of its claim and does not contain any allegations of fraud, bad faith, or illegality, TIB's unjust enrichment and money had and received claims should be dismissed.[8] TIB responds that it can plead unjust enrichment and money had and received as alternative causes of action in the event CCB argues, or the court determines, that the 2002 and 2009 Agreements are not enforceable.

"Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). "That is because parties should be bound by their express agreements." *Id.* "When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement."

---

[7]This decision is made at the Rule 12(b)(6) stage, based on the negligent misrepresentation claim as pleaded. The court suggests no view on how it would resolve a summary judgment motion addressed to the same claim.

[8]CCB also argues that TIB's claim for unjust enrichment and money had and received is barred by the statute of limitations and the economic loss rule. Because the court holds that TIB cannot plead an alternative quasi-contract claim given its allegations regarding the Agreement, the court does not address CCB's other bases for dismissal.

*Id.* Accordingly, because a claim for unjust enrichment is "based on quasi-contract," it is "unavailable when a valid, express contract governing the subject matter of the dispute exists." *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App. 1996), *aff'd sub nom.*, *Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467 (Tex. 1998); *see also Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001); *Fortune Prod. Co.*, 52 S.W.3d at 685 ("The written contracts in this case foreclose any claims for unjust enrichment."). Similarly, "[t]he existence of an express contract forecloses equitable relief under a 'money had and received' theory." *Tex Star Motors, Inc. v. Regal Fin. Co.*, 401 S.W.3d 190, 202 (Tex. App. 2012, no pet.) (citing *Fortune Prod.*, 52 S.W.3d at 684).

In this case, CCB's conduct in relation to the Loan is expressly governed by the Agreement. TIB contends that equitable claims such as unjust enrichment and money had and received can be pleaded in the alternative to a breach of contract claim. But alternative pleading is not available here. "A party can plead legal and equitable claims in the alternative, but only when one party disputes the existence of a contract governing the dispute." *Taliaferro v. Samsung Telecomms. Am., LLC*, 2012 WL 169704, at *9 (N.D. Tex. Jan. 19, 2012) (Fitzwater, C.J.) (applying Georgia law); *see also Coghlan*, 240 F.3d at 454 (affirming *sua sponte* dismissal of unjust enrichment claim because "[a]n express contract governed the Coghlans' purchase of their boat, and no implied or quasi-contract will be found where an express contract exists."). Although the parties dispute *which* contract governs—the 2002 Agreement or the 2009 Agreement—there is no suggestion that either TIB or CCB might argue that neither Agreement controls. *See generally* Pet. ¶¶ 5-33

- 17 -

(describing provisions of the Agreement, alleging Loan was purchased pursuant to Agreement, and seeking to recover for various alleged breaches of the Agreement); D. Br. 2 (the 2002 Agreement "was in effect at the time of the Loan in 2008 and should be the controlling agreement, based on the face of the pleadings."). Because neither TIB nor CCB disputes the existence of a contract that governs the parties' relationship, TIB cannot state an alternative claim under Texas law for unjust enrichment or for money had and received.

In its response, TIB requests that if the court is inclined to grant CCB's motion to dismiss, it grant TIB leave to amend to replead its allegations against CCB. Because the court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead, the court will permit TIB to amend its complaint to replead its unjust enrichment and money had and received claim against CCB if it is able to do so in a manner that will avoid dismissal. *See infra* § VI.[9]

## VI

TIB filed this case in state court, under the pleading standards that govern in that forum. It has requested, and should be given, an opportunity to replead under the federal pleading standards. *See, e.g., Hoffman v. L&M Arts*, 774 F.Supp.2d 826, 849 (N.D. Tex.

---

[9]On February 28, 2014 TIB filed a motion for leave to file a surreply (which filing CCB does not oppose) to address CCB's argument that the 2002 Agreement does not contain certain language regarding CCB's repurchase obligations that is contained in the 2009 Agreement. The court denies the motion for leave as moot because the court is denying CCB's motion to dismiss TIB's claims for breach of contract and negligent misrepresentation and because TIB's proposed surreply does not address its claim for unjust enrichment and money had and received.

- 18 -

2011) (Fitzwater, C. J.) (granting similar relief in removed case). Accordingly, the court grants TIB 28 days from the date this memorandum opinion and order is filed to file an amended complaint.[10]

*   *   *

For the reasons explained, CCB's motion to dismiss is granted in part and denied in part, and TIB is granted leave to replead.

**SO ORDERED.**

April 8, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[10]In its surreply, which this court has not considered in deciding CCB's motion, *see supra* note 9, TIB notes that *TIB I*, which is currently pending in this court, involves the same Agreements (but different loans), and it states that "[f]or the convenience of the Court and the parties, TIB can combine the complaints in both actions into a single amended complaint to be filed in the earlier action." P. Surreply 5. To the extent TIB desires that the two suits be consolidated or that it be permitted to amend the complaint in *TIB I* to add its allegations regarding the Loan, TIB must seek such relief by proper motion.

- 19 -